## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK A SIMONEAUX** | **CIVIL ACTION** |
| **VERSUS** | **NO:  07-0120-CJB-SS** |
| **MICHAEL J. ASTRUE, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Mark A. Simoneaux ("Simoneaux"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423.  Rec. doc. 1.

## PROCEDURAL HISTORY

On March 30, 2004, Simoneaux submitted an application for disability insurance benefits. He alleged that he became disabled on December 31, 1995. R. 41-43.  He listed gout, arthritis, heart bypass surgery, heart attack, high blood pressure and diabetes as disabling conditions.  R. 50.  On August 2, 2004, he was notified that his application was denied.  R. 24-27.

On August 16, 2004, Simoneaux requested a hearing before an Administrative Law Judge ("ALJ"), r. 28, which was conducted on May 16, 2006.  R. 312. On June 26, 2006, the ALJ issued an unfavorable decision determining that Simoneaux was not under a disability at any time through September 30, 2001.  R. 13-20.

On September 27, 2006, the Appeals Council granted Simoneaux's request for review. It reported that: (a) the ALJ used the wrong date for the date last insured; (b) March 31, 2002 was the correct date; and (c) it planned to make a decision finding that he was not disabled through that date. Simoneaux was offered the opportunity to present more evidence, but he did not do so. R. 308-11 and 306-07. On November 3, 2006, the Appeals Council issued an unfavorable decision. R. 5–10.

On January 5, 2007, Simoneaux filed a complaint for review with this Court. Rec. doc. 1. The parties submitted cross-motions for summary judgment. Rec. doc. 7 and 10. Simoneaux was represented by counsel throughout these proceedings.

## STATEMENT OF ISSUES ON APPEAL

Whether there is substantial evidence of record to support the final decision of the Commissioner that Simoneaux was not entitled to disability benefits during the period from June 1, 1999, through March 31, 2002, and whether the correct legal standard was used.

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. Simoneaux last met the insured status requirements of the Social Security Act on September 30, 2001.

2. Simoneaux did not engage in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 et. seq.).

3. Through the date last insured, Simoneaux had the following severe impairments: a history of coronary artery disease with bypass surgery, hypertension, hyperlipidemia, diabetes, and gout (20 CFR 404.1520(c)). He had no other severe impairments.

4. Through the date last insured, Simoneaux did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, Simoneaux had the residual functional capacity to lift and carry 20 pounds on

2

occasion and 10 pounds on a frequent basis.  He could stand/walk six hours in an 8-hour workday and sit six hours in an 8-hour workday with normal break periods.  He was able to drive only one hour at times and occasionally climb stairs and ramps, stoops, kneel, crouch and crawl.  He could not balance, climb ladders, ropes or scaffolds, or work at unprotected heights or around dangerous moving machinery.

6.    Through the date last insured Simoneaux's past relevant work as the owner and manager of an automobile lube station did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR 404.1565).

7.    Simoneaux was not under a "disability," as defined in the Social Security Act, at any time through September 30, 2001, the date last insured (20 CFR 404.1520(f)).

R. 17-20.

The Appeals Council made the following findings relevant to the issues on appeal:

1.    Simoneaux's date last insured was March 31, 2002.

2.    Simoneaux has not engaged in substantial gainful activity since June 1, 1999.

3.    Simoneaux has the following severe impairments:  gout, arthritis, Gastroesophageal Reflux Disease and high blood pressure, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

4.    Simoneaux's combination of impairments results in the following limitations on his ability to perform work-related activities:  can perform light work with no balancing, no heights, no hazards and driving only one hour at a time.

5.    Simoneaux's subjective complaints are not fully credible for the reasons identified in the ALJ's decision of June 26, 2006.

6.    The limitations on Simoneaux's ability to perform work-related activities as set forth in Finding 3, do not preclude the performance of past relevant work as owner and manager of an automobile lube station.  Therefore, the claimant's combination of impairments does not preclude the performance of past relevant work (20 CFR 404.1520(e)).

7.    Simoneaux is not disabled as defined in the Social Security Act at any time through March 31, 2002, the date that he last met the insured status requirement of the Act.

R. 9-10.

## **ANALYSIS**

a.      **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide

procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599

& appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process

for determining whether an impairment prevents a person from engaging in any substantial gainful

activity. Id. §§ 404.1520, 416.920; Newton v. Apfel, 209 F.3d at 453; Greenspan v. Shalala, 38 F.3d

232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step inquiry

terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v.

Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If he

successfully carries this burden, the burden shifts to the Commissioner to show that other substantial

gainful employment is available in the national economy, which the claimant is capable of

performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989).

---

[1] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

b.    **Testimony at the Hearing.**

Simoneaux was 49 at the time of the hearing. R. 315. He held a GED. R. 316. In 1980 he began working for the Georgia Gulf Chemical plant. After twelve years he was taken off of shift work because of his gout. He was unable to walk and climb stairs. After a year he left the job, because there was too much walking. R. 316. He went into business for himself with Quick Lube. Because of his inability to do that job he sold the business in 1999 and has not worked since. R. 316-17.

Simoneaux began experiencing gout in 1991 or 1992. R. 317. There were times in 1996 and 1997, when he was unable to walk for two to three months because of the gout. R. 317. He described it as feeling like someone was driving nails into his feet. R. 317. He experienced gout in his knees and feet and had fluid drained from his knees. R. 318. He also received injections in his knees. R. 319. At Georgia Gulf he missed three to five days a month because of gout. R. 318. At the time of the hearing, he experienced attacks of gout two to three times a month with each attack lasting two or three days. R. 320. During an attack of gout he used crutches to get around. R. 320. He was able to use the bathroom. R. 320. During the attacks he sat in the kitchen and

watched TV.  R. 320.  When he had an attack, he described the pain as a ten on a scale of one to ten.
R. 321.

Simoneaux could not work because he could not perform the duties required at Georgia Gulf
and because he could not run his own business because of the need to be there during its hours of
operation.  He estimated that he could not work for six to ten days a month because of gout.  R. 321.

Simoneaux had an angioplasty in 1997 and a heart attack in 2003.  R. 322.  He was
diagnosed with the ruptured discs in 2003 or 2004.  R. 322.  He slept with a C-PAP, because he had
sleep apnea.  R. 322.  He slept about two hours at a time.  When he was awake, he sat around and
watched TV.  R. 322-23.  On good days he could not stand for more than one or two hours.  R. 323.
He could not climb stairs or ladders.  R. 323.  Because of his back problems, he could not drive for
more than an hour.  R. 324.

The vocational expert testified that, based on the ALJ's hypothetical question, Simoneaux
could return to his past job as manager of an auto lube shop.  R. 326-27.  With additional
restrictions, he was limited to sedentary work such as a cashier, telemarketer, customer service
representative or interviewer.  R. 327-28.

c.    **Medical Records.**

### 1991-1993

On December 10, 2001, Simoneaux reported he underwent a coronary angioplasty about ten years before.  R. 147.  On May 21, 2003, he reported that he had the angioplasty in 1993.  R. 98. There are no other records of the procedure.

### 1999

On January 25 and February 1, 1999, Simoneaux was seen by Keith Landry, M.D. for complaints of aching and coughing.  R. 139.  On April 7, 1999, he complained of congestion.  R. 138.  On June 28, 1999, he reported gout in both feet.  R. 138.  He cancelled an appointment for July 2, 1999 and failed to appear for an appointment on August 24, 1999.  R. 137.  On November 23, 1999, he had high fever and a cough.  R. 137.  On November 29, 1999, he complained of fever and a deep cough.  Dr. Landry's diagnosis was bronchitis.  R. 136.  On December 6, 1999, he reported hoarseness and a cough.  R. 136.

### 2000

On April 6, 2000, Simoneaux saw Dr. Landry and reported sinus congestion.  R. 135.  On April 20, 2000, he reported that he slept all day and all night and snored a lot.  He had high blood pressure.  R. 134.  On June 13, 2000, he cancelled an appointment.  R. 134.  On June 14, 2000, he was diagnosed with acute gout.  R. 220.

### 2001

On May 14, 2001, Simoneaux visited Dr. Landry and complained of gout in his foot.  He had high blood pressure. R. 133.  On December 7, 2001, he had indigestion and pain in his abdomen. R. 131.  On December 10, 2001, he was examined by Joseph Cefalu, M.D.  A treadmill evaluation

was conducted.  Dr. Cefalu recommended a catheterization.  R. 147-48 and 152.  On December 13, 2001, Dr. Cefalu performed the catheterization.  R. 150-51.  A December 19, 2001, a CT of the chest did not identify a significant abnormality.  R. 146.

### 2002

On April 4, 2002, Simoneaux saw Dr. Landry and complained of right knee pain.  R. 130. On April 30, 2002, he complained of back pain.  R. 130.  On September 25, 2002, he sought treatment for a sinus complaint.  R. 129.

### 2003

From March 2003 through May 2003, Simoneaux was seen by Dr. Landry for complaints of leg and knee pain and other conditions.  R. 125-28.  From May 2003 through November 2003, he was seen by Dr. Landry for complaints of stomach problems, knee, leg and foot pain, sinus complaints, chronic constipation and other problems.  R. 121-24.

On May 21, 2003, he was diagnosed with artery disease and unstable angina.  The impression was inferior myocardial infarction, hypertension, history of coronary artery disease and history of hyperlipidemia.  R. 99.  Dr. Cefalu performed a left heart catheterization and coronary quintuple bypass surgery at Our Lady of the Lake hospital in Baton Rouge.  At his discharge on May 27, 2003, he was stable.  He was on aspirin, Toprol, Lipitor and home gout medications.  R. 95-97. On June 11, 2003, Walter Bringaze, M.D., a cardiac surgeon, reported that he was doing well after his surgery.  His appetite was normal.  He was walking about one third of a mile without difficulty. R. 145.  On July 9, 2003, Dr. Cefalu examined him.  He was to return in six months.  R. 144.

On November 26, 2003, Dr. John Whitaker treated him on an outpatient basis for an anal fissure and perirectal abscess.  In the operating room the abscess was drained and a sphincterotomy was performed for the anal fissure.  R. 113.

On December 22, 2003, Simoneaux complained of gout in his foot.  R. 220.

## 2004

On January 7, 2004, Simoneaux took a cardiac exercise test.  R. 140.  On January 26, 2004, he was seen by John E. Marshall, M.D., who diagnosed gouty arthritis.  He was to return in four to six weeks. R. 154.  On April 20, 2004, he complained of back pain.  R. 218.  On April 29, 2004, Dr. Marshall reported the gouty arthritis under adequate control.  R. 188.  On May 25, 2004, he was diagnosed with chest pain and gastroesophageal reflux disease.  R. 182-86.  On June 17, 2004, Dr. Cefalu found him stable from a cardiac standpoint.  R. 189.  On June 25, 2004, he was seen by V. Jampala, M.D. for an examination.  He had high blood pressure and chronic gout.  He was diagnosed with gouty arthritis and great toe pain.  R. 165-67.  On July 28, 2004, he complained of foot pain. R. 219.  On August 25, 2004, he reported acute pain in the left knee and foot.  The diagnosis was acute gout.  R. 181.

An August 19, 2004 test indicated herniated discs at L4-5 and L5-S1.  R. 202-03.  On August 30, 2004, a neurologic examination revealed bilateral lower extremity weakness and bilateral numbness in the feet.  R. 214-17.  On September 7, 2004, nerve conduction studies indicated mild chronic right L5-S1 radiculopathy. R. 197.   On September 9 and 30, 2004, he was given lumbar epidural steroid injections at the L4-5 disc space.  R. 204-07.  On October 4, 2004, Simoneaux reported pain in his right side.  R. 221.

On October 28, 2004, he reported a sore throat.  R. 221.  On December 14, 2004, he complained of a sinus condition.  R. 221.

### 2005

On January 10, 2005, Simoneaux complained of congestion and aching.  R. 222.  On February 25, 2005, he complained that playing golf made his condition worse.  He was 100 pounds overweight.  R. 211.  On April 6, 2005, he was given an epidural steroid injection at L5-S1 with a diagnosis of disc herniation at L4-5 and L5-S1.  R. 176-77.  On June 20, 2005, he complained of a sore throat.  R. 222.  On July 21, 2005, he reported lower back pain and right leg pain.  He was encouraged to walk and lose weight.  R. 210.  On September 2, 2005, he reported sciatica and lower back pain.  R. 209.  On September 12, 2005, Dr. Cefalu recommended an evaluation of his coronary disease before any surgery.  R. 190.  On September 14, 2005, cardiac imaging indicated a large fixed inferior perfusion defect.  R. 195.  On September 19, 2005, he complained of right knee pain.  R. 222.  On October 14, 2005, he complained of knee pain.  R. 223.  On November 8, 2005, he complained of coughing.  R. 223.  On December 12, 2005, he complained of right knee pain.  R. 223.

### 2006

On February 14, 2006, Simoneaux complained of right knee pain.  R. 224.  On March 8, 2006, he was seen for his herniated disc.  He was encouraged to diet, avoid heavy lifting and to reduce his lumbar pain medications.  He was to return in several weeks.  R. 208.  On April 21, 2006, he complained of a sinus condition.  R. 224.

d.     **Plaintiff's Appeal.**

Issue. Whether there is substantial evidence of record to support the final decision of the Commissioner that Simoneaux was not entitled to disability benefits during the period from June 1, 1999, through March 31, 2002, and whether the correct legal standard was used.

Simoneaux contends that the ALJ's decision was not supported by substantial evidence.  As the procedural history demonstrates, the ALJ's decision was based on the finding that Simoneaux last met the insured status on September 30, 2001.  R. 15.  In response to his request for review, the Appeals Council acknowledged that the ALJ used the wrong date and Simoneaux met the insured status requirements through March 31, 2002.  R. 308-11.  The issue before this court is whether there is substantial evidence to support the Commissioner's determination that Simoneaux was not disabled from June 1, 1999 through March 31, 2002.

Simoneaux alleged that he became disabled on December 31, 1995.  R. 41-43.  He testified that he could not run his own Quick Lube business because of the limitations imposed by recurrent attacks of gout, bypass surgery and two herniated discs.  The only medical record prior to 1999 is Simoneaux's report of a coronary angioplasty in 1993.  In 1999, he was treated by Dr. Landry.  Although he saw Dr. Landry with complaints of gout in both feet on June 28, 1999, he cancelled an appointment for July 2, 1999 and failed to appear for one on August 24, 1999.  In November 1999, he returned to Dr. Landry for bronchitis.  R. 136.  The notes of the visits to Dr. Landry in November and December 1999 do not refer to complaints of gout.  R. 136.  The next complaint of gout was on June 14, 2000.  R. 220.  The only remaining complaint of gout prior to March 31, 2002 was on May 14, 2001.  R. 133.

During the period at issue, December 31, 1995 through March 31, 2002, Simoneaux's only treatment for his heart condition was in December 2001.  At that time he reported increased chest pains over the preceding several weeks.  R. 147.  A catheterization was done, which showed no

major disease.  R. 98.  Simoneaux did not suffer a heart attack until May 2003, which was after the

pertinent period.  R. 95-97.  Simoneaux was not diagnosed with herniated discs until 2004, more

than two years after the date last insured.  R. 202-03.  Even after the heart attack and the diagnosis

of the herniated discs, F.E. Landreneau, M.D., who saw him for his back condition, told him only

to avoid heavy lifting.  R. 208.  On July 21, 2005, Dr. Landreneau encouraged him to walk an

increasing distance each day.  R. 210. A reasonable mind might accept the evidence as adequate to

support the Commissioner's conclusion that Simoneaux's conditions, although severe, were not

disabling through March 31, 2002.  Carey, 230 F.3d at 135.

Simoneaux raises three further questions:  (1) the Commissioner's regulations compel the

conclusion that its decision is not supported by substantial evidence; (2) the Appeals Council was

required to remand the matter for a new hearing; and (3) the Commissioner's finding is contrary to

the ALJ's determination that, while he was not disabled through September 30, 2001, he was

disabled by March 31, 2002.

As to the first of these, Simoneaux cites the rule found in the Commissioner's "Hearings,

Appeals and Litigation Law Manual" that "[w]hen the ALJ clearly misinterpreted or incorrectly

evaluated evidence upon which a decision was based, the decision is not supported by substantial

evidence."  Rec. doc. 7 (Attachment 1).  This problem was rectified by the decision of the Appeals

Council.  Simoneaux has not demonstrated that the decision of the Appeals Council was not

supported by substantial evidence.

On the second question, Simoneaux relies on the provision in the "Hearings, Appeals and

Litigation Law Manual" that a new hearing is required where the notice of hearing did not reflect

the correct date last insured.  Rec. doc.7 (Attachment 2).  The notice of hearing did not include the

date last insured.  R. 35-38.  It only stated that, "I must decide if you became disabled while

insured."  R. 36.  An incorrect date was not provided to Simoneaux in the notice of hearing.

Simoneaux contends that "[i]nferentially, the Judge [ALJ] believed Mr. Simoneaux to be

disabled at some point after September 30, 2001."  Rec. doc. 7 at p. 4.  The ALJ said:

> The claimant must establish disability beginning on or before September 30, 2001.
> It will not aid the claimant in regard to his claim for a period of disability and
> disability insurance benefits to show that he became disabled subsequent to
> September 30, 2001 or that he is presently disabled, since an impairment arising after
> the earnings requirements were last met cannot be the basis for entitlement to
> disability insurance benefits.

R. 19.  This statement cannot be construed as a finding by the ALJ that Simoneaux became disabled

after September 30, 2001.  Simoneaux did not file his application until nearly two years after the

correct last date insured and more than eight years after he alleges that he became disabled.  R. 41-

43.  Most of the medical evidence presented to the ALJ was for the years 2003 through 2006.  Much

of the testimony elicited by Simoneaux's attorney pertained to his condition at the time of the

hearing rather than during the period at issue.  The ALJ's statement is nothing more than a

description of the relevant evidence.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that:  (1) the Commissioner's cross-motion for

summary judgment (Rec. doc. 10) be granted; and (2) Simoneaux's motion for summary judgment

(Rec. doc. 7) be denied.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 29th day of August, 2007.

_____
**SALLY SHUSHAN**
**United States Magistrate Judge**